# EXHIBIT A

201037726
(js)

COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

CitiMortgage, Inc. successor by
merger to ABN AMRO Mortgage Group,
Inc.
1000 Technology Drive, MS 314
O Fallon, MO 63368-2240

               Plaintiff

    vs.

Leonard Nyamusevya
P.O. Box 243
Reynoldsburg, OH 43068

Consolata Nkurunziza
2064 Worcester Court
Columbus, OH 43232

Franklin County Treasurer
373 South High Street 17th Floor
Columbus, OH 43215

Jane Doe, name unknown, spouse of
Leonard Nyamusevya
P.O. Box 243
Reynoldsburg, OH 43068

John Doe, name unknown, spouse of
Consolata Nkurunziza
2064 Worcester Court
Columbus, OH 43232

           Defendants.

Case No. **10 CVE 09 13480**

*C. Schneider*

**COMPLAINT IN FORECLOSURE**

Permanent Parcel No. 010-144771

FILED
COMMON PLEAS COURT
FRANKLIN CO. OHIO
2010 SEP 14 AM 10:05
CLERK OF COURTS



LSR201037726D157P1300C9

## COMPLAINT

### COUNT ONE

1. Plaintiff is the holder of a note, a copy of which is not available at this time.  By reason of default under the terms of the note and the mortgage securing same, plaintiff has declared the debt evidenced by said note due,  and there is due thereon from the defendants, Leonard Nyamusevya and Consolata Nkurunziza, $98,452.56, together with interest at the rate of 6.250% per year from May 1, 2010, and as may be subsequently adjusted pursuant to the terms of the Note, plus court costs, advances, and other charges, as allowed by law.

### COUNT TWO

2. Plaintiff incorporates the allegations of Count One and further states that the aforesaid note is secured by a mortgage, a copy of which is attached hereto as Exhibit 'A', and that said mortgage constitutes a valid first lien upon the real estate described therein.

3. The mortgage was filed for record on July 5, 2002, in Instrument No. 200207050165696, of the county recorder's records and it was assigned to the plaintiff herein.  The conditions of defeasance contained therein have been broken; plaintiff has complied with all conditions precedent; and plaintiff is entitled to have said mortgage foreclosed.  A copy of said Assignment is attached hereto as Exhibit 'B'.

4. Plaintiff says that the defendant, Jane Doe, name unknown, spouse of Leonard Nyamusevya, may claim an interest in the subject property as the current spouse of the defendant-titleholder, Leonard Nyamusevya.  Plaintiff states that it cannot currently discover the real name of said defendant.

5. Plaintiff says that the defendant, John Doe, name unknown, spouse of Consolata Nkurunziza, may claim an interest in the subject property as the current spouse of the defendant-titleholder, Consolata Nkurunziza.  Plaintiff states that it cannot currently discover the real name of said defendant.

6. Plaintiff says that the defendant, Franklin County Treasurer, may claim an interest in the above described property by virtue of any unpaid real estate taxes and/or assessments due and owing on the subject property.

WHEREFORE, plaintiff prays for judgment against defendants, Leonard Nyamusevya and Consolata Nkurunziza, in the amount of $98,452.56, together with interest at the rate of 6.250% per year from May 1, 2010, and as may be subsequently adjusted pursuant to the terms of the Note, plus court costs, advances, and other charges, as allowed by law; that plaintiff's mortgage be adjudged a valid first lien upon the real estate described herein, and that said mortgage be foreclosed; that said real property may be ordered sold, and that plaintiff be paid out of the proceeds of such sale; for such other relief, legal and equitable, as may be

proper and necessary; and that all the other defendants herein be

required to set up their liens or interests in said real estate or

be forever barred from asserting same.

Elizabeth A. Carullo, Trial Counsel
Ohio Supreme Court Reg. #0083515
LERNER, SAMPSON & ROTHFUSS
Attorneys for CitiMortgage, Inc.
successor by merger to ABN AMRO
Mortgage Group, Inc.
P.O. Box 5480
Cincinnati, OH 45201-5480
(513) 241-3100
(513) 241-4094 Fax
(877) 661-7891 Toll Free Fax
attyemail@lsrlaw.com

13    A

After Recording Return To:
CAPITOL MORTGAGE SERVICES, INC.
445 N. HIGH STREET  5TH FLOOR
COLUMBUS, OHIO 43215
Loan Number: ▮▮▮▮▮

Ins ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Pages:13    F:$58.00    07/05/2002
Robert G. Montgomery    T20020079920
Franklin County Recorder    1:47PM
BXHUMMEL T

**Hummel Title Agency**
2715 East Main Street
Columbus, Ohio 43209
614-237-3525

HTAC # ▮▮▮▮▮▮▮▮

———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated    JUNE 26    , 2002 , together with all Riders to this document.
(B)  "Borrower" is LEONARD NYAMUSEVYA, A MARRIED MAN AND CONSOLATA NKURUNZIZA, A MARRIED WOMAN HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C)  "Lender" is CAPITOL MORTGAGE SERVICES, INC.

Lender is a  CORPORATION                                                          organized
and existing under the laws of  OHIO
Lender's address is  445 N. HIGH STREET  5TH FLOOR, COLUMBUS, OHIO 43215

Lender is the mortgagee under this Security Instrument.
(D)  "Note" means the promissory note signed by Borrower and dated    JUNE 26    , 2002 .
The Note states that Borrower owes Lender    ONE HUNDRED THIRTY SIX THOUSAND SEVEN HUNDRED AND 00/100 Dollars (U.S. $ 136,700.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    JULY 1, 2022 .
(E)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]
☐ 1-4 Family Rider    ☐ Biweekly Payment Rider

Borrower Initials: _L.N._    _C.N._

OHIO—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    DocMagic eForms 800-649-1362
Form 3036 1/01    www.docmagic.com
With Authorized Changes
Page 1 of 12

OH3036I.MTG

(H)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K)   "Escrow Items" means those items that are described in Section 3.

(L)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the

| COUNTY | of | FRANKLIN |
|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 010-144771

which currently has the address of   2064 WORCESTER COURT

| | | | [Street] |
|---|---|---|---|
| COLUMBUS | , Ohio | 43232 | ("Property Address"): |
| [City] | | [Zip Code] | |

Borrower Initials:   *L.N.*          *CM*

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3036 1/01
With Authorized Changes
Page 2 of 12

DocMagic *eForms* 800-649-1362
www.docmagic.com

OHEM62.MTG

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and

Borrower Initials: _L.N._      _CH_

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3036 1/01
With Authorized Changes                          Page 3 of 12

DocMagic *eⅇⅇⅇⅇ* 800-649-1362
www.docmagic.com

OH3036.3.MTG

assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder

Borrower Initials: _L.N._ _____  _CN_ _____

OHIO--Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3036 1/01
With Authorized Changes                          Page 4 of 12

DocMagic ℰ𝓕𝓸𝓻𝓶𝓼 800-649-1362
www.docmagic.com

OH3036LMTG

of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the

Borrower Initials: _L. N._      _C.H_

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3036 1/01
With Authorized Changes                                Page 5 of 12

DocMagic *EMagic* 800-649-1362
www.docmagic.com

OH3036S.MTG

notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower Initials: *L. N.*                                *CN*

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3036 1/01
With Authorized Changes                               Page 6 of 12

DocMagic ℰℱℴℛℳℴ 800-649-1362
www.docmagic.com

OHX3036.MTG

**10.  Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11.  Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or

Borrower Initials: _L.N._         _CN_

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3036 1/01
With Authorized Changes                    Page 7 of 12

DocMagic €:€€€€€€ 800-649-1362
www.docmagic.com

OHXX067.MTG

Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.    **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.    **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights

Borrower Initials:  _L·N·_        _C·N_

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3036 1/01
With Authorized Changes                                          Page 8 of 12

DocMagic ℰℱⓇⓂⓈ  800-649-1362
www.docmagic.com

OH3036.MTG

and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Borrower Initials: *L.N.*                          *CH*

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3036 1/01
With Authorized Changes                          Page 9 of 12

DocMagic ☎800-649-1362
www.docmagic.com

OH3036.MTG

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower Initials: _L. N._        _CN_

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3036 1/01
With Authorized Changes                          Page 10 of 12

DocMagic ☆Forms 800-649-1362
www.docmagic.com

OH3038.MTG

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.

23.  **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.  **Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, FRANKLIN   County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of § 5301.233 of the Revised Code of Ohio.

Borrower Initials:  *L.N.*      *CH*

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3036 1/01
With Authorized Changes                    Page 11 of 12

*DocMagic* €☎☐☎  800-649-1362
www.docmagic.com

OH3036l1.MTG

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Executed this 26 day of _June 2002_

_Leonard Nyamusevya_ (Seal)
LEONARD NYAMUSEVYA          -Borrower

_Consolata Nkurunziza_ (Seal)
CONSOLATA NKURUNZIZA          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

(Execution in accordance with Chapter 5301 of the Revised Code.)

State of Ohio                          )
                                       ) ss.
County of  FRANKLIN                    )

     The foregoing instrument was acknowledged before me this _June 26, 2002,_
by LEONARD NYAMUSEVYA, CONSOLATA NKURUNZIZA _, husband & wife_

CHRIS J. CAW
Notary Public, State of Ohio
My Commission Expires
02-28-2006

_Chris J. Caw_
Signature of Person Taking Acknowledgment

_Closing Agent_
Title

_____
Serial Number, if any

(Seal)                     My commission expires:

This Instrument Prepared By:
EQUITY FREE, LLC 751 NORTHWEST
BLVD., SUITE 301 COLUMBUS, OH 43212

OHIO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3036 1/01
With Authorized Changes                Page 12 of 12

DocMagic 800-649-1362
www.docmagic.com

OH3036I2.MTG

Exhibit A

Legal Description

**File Number:** ███████

Situated in the State of Ohio, County of Franklin, and in the City of Columbus:

Being Lot Number Two Hundred Seventy-five (275), of Amended Plat of Walnut Hill Park, Section No. 2, as the same is numbered and delineated upon the recorded plat thereof, of record in Plat Book 38, Page 77, Recorder's Office, Franklin County, Ohio.

Parcel No.  010-144771

Also known as:  2064 Worcester Court, Columbus, Ohio  43232

*End Of Legal Description*

𝓑

RECORDING REQUESTED BY:
CAPITOL MORTGAGE SERVICES, INC.

WHEN RECORDED, MAIL TO:
CAPITOL MORTGAGE SERVICES, INC.
445 N. HIGH STREET  5TH FLOOR
COLUMBUS, OHIO 43215



Instr:200207006160798      07/08/2002
Pages:2   F:$16.00            1:58PM
Robert G. Montgomery  T200200780085
Franklin County Recorder  BXHUMMEL T

Application No.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Corporation Assignment of Mortgage

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged,
CAPITOL MORTGAGE SERVICES, INC., AN OHIO CORPORATION
("Assignor"),
does hereby sell, assign, transfer and set over unto  ABN AMRO MORTGAGE GROUP, INC., 2600
WEST BIG BEAVER ROAD, TROY, MICHIGAN 48084
("Assignee")
all of Assignor's right, title and interest in and to that certain Open-end Mortgage dated    JUNE 26, 2002    ,
, delivered to Assignor by LEONARD NYAMUSEVYA, A MARRIED MAN AND
CONSOLATA NKURUNZIZA, A MARRIED WOMAN HUSBAND AND WIFE
and recorded concurrently herewith in Volume     , Page         of the Official Records
in the County Recorder's office of   FRANKLIN           County, OHIO
describing land therein as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".
A.P.N. #: 010-144771

✱ 200207010160742

("Assignee").

TOGETHER with the note or notes therein described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

IN WITNESS WHEREOF, Assignor has executed this instrument as of the  26th day of  June
2002.
DATE  6/26/02
STATE OF OHIO
COUNTY OF FRANKLIN

BEFORE ME,  Murray A. Davis
Notary Public in and for said County and State, personally appeared

JEFFREY D. MEYER
AUTHORIZED AGENT

of Assignor, who acknowledged that he/she did sign the foregoing
instrument on behalf of Assignor.
IN WITNESS WHEREOF, I have set my hand and official seal at

this  26th  day of   June  2002.

Signature

Notary Public

My commission expires:

CAPITOL MORTGAGE SERVICES,
INC., AN OHIO CORPORATION

By:  Jeffrey D. Meyer
JEFFREY D. MEYER
ITS:  Authorized Agent

MURRAY A. DAVIS, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date prepared by:
Section 147.03 R.C.  TREE, LLC 751 NORTHWEST
BLVD., SUITE 301 COLUMBUS, OH
43212

Hummel Title Agency
2715 East Main Street
Columbus, Ohio 43209
614-237-3525

HTAC #

Exhibit A

Legal Description

**File Number:** ███████████

Situated in the State of Ohio, County of Franklin, and in the City of Columbus:

Being Lot Number Two Hundred Seventy-five (275), of Amended Plat of Walnut Hill Park, Section No. 2, as the same is numbered and delineated upon the recorded plat thereof, of record in Plat Book 38, Page 77, Recorder's Office, Franklin County, Ohio.

Parcel No.  010-144771

Also known as:  2064 Worcester Court, Columbus, Ohio  43232

*End Of Legal Description*

MARYELLEN O'SHAUGHNESSY

FRANKLIN COUNTY CLERK OF COURT

GENERAL DIVISION

369 S. HIGH STREET, 3RD FLOOR

COLUMBUS, OHIO 43215

Receipt#: **EAS-5420888**

Issued: 09/14/10

Printed: 09/14/10

**10  CV  13480   09**

CITIMORTGAGE INC -VS- LEONARD NYAMUSEVYA

| | | |
|---|---|---|
| CLERK FEE FUND | CF | $25.00 |
| DAILY REPORTER | DR | $10.00 |
| LEGAL RESEARCH - GEN | 27 | $3.00 |
| COURT COMPUTERIZATION FEES | CC | $10.00 |
| LEGAL AID | LA | $26.00 |
| SPECIAL DOCKET FEE | SD | $2.00 |

| | | | | |
|---|---|---|---|---|
| CHECK | : | $300.00 | Check#: 1802229 | |
| TOTAL | : | $300.00 | | |

HOLD ON DEPOSIT: $224.00

Total Applied: $300.00

Total Received: $300.00

Receipt Type    : COMPLAINT- FORECLOSURE

Transaction Type : Payment

Paid In Full?    : Yes

Representing    : Plaintiff

Attorney #/Name : (    83515) / ELIZABETH A CARULLO

Comment        :

PER          SIDDLE, ELIZABETH A

DEPUTY

RECEIVED PAYMENT  -  FRANKLIN COUNTY  -  CLERK OF COURTS

**Customer Copy**

201037726

## COURT OF COMMON PLEAS
## FRANKLIN COUNTY, OHIO

**INSTRUCTIONS FOR SERVICE**

CitiMortgage, Inc. successor by
merger to ABN AMRO Mortgage
Group, Inc.

                     Plaintiff,

        -vs-

Leonard Nyamusevya, et al.

                  Defendants

Case No.

# 10 CVE 09 13480

TO THE { X } CLERK OF COURTS     TO THE SHERIFF OF <u>FRANKLIN</u> COUNTY

YOU ARE INSTRUCTED TO MAKE:    { X } CERTIFIED MAIL SERVICE

UPON:

Leonard Nyamusevya
P.O. Box 243
Reynoldsburg, OH 43068

Consolata Nkurunziza
2064 Worcester Court
Columbus, OH 43232

Franklin County Treasurer
373 South High Street 17th Floor
Columbus, OH 43215

Jane Doe, name unknown, spouse of Leonard Nyamusevya
P.O. Box 243
Reynoldsburg, OH 43068

John Doe, name unknown, spouse of Consolata Nkurunziza
2064 Worcester Court
Columbus, OH 43232

Elizabeth A. Carullo, Attorney
Ohio Supreme Court Reg. #0083515

LSR201037726D579P1300C9

1

September 13, 2010

201037726
    (js)                     COURT OF COMMON PLEAS
                             FRANKLIN COUNTY, OHIO

                                        PRAECIPE

CitiMortgage, Inc. successor
by merger to ABN AMRO              CASE NO: **10 CVE 09 13480**
Mortgage Group, Inc.
                    PLAINTIFF


Leonard Nyamusevya, et al.
                    DEFENDANT

    Please issue a Residential Service of Summons on the
Complaint via Court Appointed Special Process Server
Legalex, Inc.


        Consolata Nkurunziza
        2064 Worcester Court
        Columbus, OH 43232

        John Doe, name unknown, spouse of Consolata Nkurunziza
        2064 Worcester Court
        Columbus, OH 43232

        Elizabeth A. Carullo
        Ohio Supreme Court No. 0083515
        Attorney for Plaintiff
        Lerner, Sampson & Rothfuss
        120 East Fourth Street, 8th Floor
        Cincinnati, OH 45202-4007
        (513) 241-3100
        (513) 241-4094 Fax
        (877) 661-7891 Toll Free Fax
        attyemail@lsrlaw.com

LSR201037726D579P1300C9

**EXHIBIT B**

LSR# 201037726

IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

CITIMORTGAGE, INC. SUCCESSOR BY
MERGER TO ABN AMRO MORTGAGE
GROUP, INC.

                    Plaintiff,

        -vs-

LEONARD NYAMUSEVYA AND
CONSOLATA NKURUNZIZA, ET AL.

                 Defendants.

Case No. 10CVE 09 13480

Judge Charles Schneider

## JUDGMENT AND DECREE IN FORECLOSURE

    This matter is before the Court upon the Court's Decision of July 10, 2013, copy attached, and the Motion for Summary Judgment and Affidavit of the Plaintiff to obtain JUDGMENT upon the Note as described in the Complaint; and to foreclose the lien of the Mortgage securing the obligation of such Note upon the real estate described herein; and to obtain JUDGMENT upon the Defendant Leonard Nyamusevya' Counterclaims; and lastly to require all parties to set up their claims to the real estate or be forever barred.

    The Court finds that all necessary parties have been properly served, are properly before the Court, and that the Defendants, Jane Doe, name unknown, spouse of Leonard Nyamusevya and John Doe, name unknown, spouse of Consolata Nkurunziza are in default of Motion or Answer.

    The Court further finds that Defendant Leonard Nyamusevya has filed an Answer and Counterclaim in response to the Complaint. Defendant's Counterclaim is hereby DISMISSED, with prejudice.

Case No. 10CVE 09 13480

The Court finds that the allegations contained in the Complaint are true and that there is due and owing to the Plaintiff, from the Defendants, Leonard Nyamusevya and Consolata Nkurunziza, jointly and severally, upon the subject Note the principal balance of $98,452.56, for which amount JUDGMENT is hereby rendered in favor of the Plaintiff, with interest at the rate of 6.250 percent per annum from May 1, 2010, and as may be adjusted pursuant to the terms of the Note, together with advances for taxes, insurance, costs of the judicial reports required herein and otherwise expended under the Note and Mortgage, plus court costs taxed as costs .

The Court finds that the Note is secured by the Mortgage held by the Plaintiff, which Mortgage constitutes a valid and first lien upon the following described premises:

See Exhibit "A"

The Court finds that the Mortgage was filed for record on July 5, 2002, at Instrument No. 200207050165696, with the Franklin County Recorder's Office; that the conditions of said Mortgage have been broken and Plaintiff is entitled to have the equity of redemption of the Defendant-titleholders foreclosed.

The Court finds that the Defendant, Franklin County Treasurer, has filed an Answer herein asserting an interest in the real estate which is the subject of this action, which interest is senior in priority to Plaintiff's interest as hereinabove set forth.

IT IS THEREFORE, ORDERED that unless the sums hereinabove found to be due to Plaintiff, and the costs of this action, be fully paid within three (3) days from the date of the entry of this Decree, the equity of redemption of the Defendant-titleholders in said real estate shall be foreclosed and the real estate sold, free of the interests of all parties herein, and an order of sale may issue to the Sheriff of this County, directing him to appraise, advertise and sell said real estate, according to law and the orders of this Court, and report his proceedings to this Court. If the United

2

States of America holds a lien on the real estate, the United States of America shall have the right to redeem as provided by Title 28, Section 2410 (C), United States Code.

IT IS FURTHER ORDERED that the Sheriff shall send counsel for the party requesting the Order of Sale a copy of the publication notice promptly upon its first publication.

IT IS FURTHER ORDERED that the Sheriff, upon confirmation of said sale, shall pay from the proceeds of said sale, upon the claims herein found, the amounts thereof in the following order of priority:

1. To the Clerk of this Court, the costs of this action, including the fees of appraisers.

2. To the Treasurer of this County, the taxes and assessments, due and payable as of the date of transfer of the property after Sheriff's Sale.

3. To the Plaintiff, the sum of $98,452.56, with interest at the rate of 6.250 percent per annum from May 1, 2010, and as may be adjusted pursuant to the terms of the Note, together with advances for taxes, insurance, costs of the judicial reports required herein and otherwise expended, plus court costs.

4. The balance of the sale proceeds, if any, shall be paid by the Sheriff to the Clerk of this Court to await further orders of this Court.

The Court further finds that there is no just reason for delay.

_____

JUDGE

3

Case No. 10CVE 09 13480

Case 2:19-bk-52868    Doc 109-1    Filed 10/15/19    Entered 10/15/19 17:10:48    Desc
Franklin County Ohio Clerk of Courts of the Common Pleas- 2014 May 20 3:20 PM-10CV013480
Exhibit the Page 26 of 72
0B849  -  U90

Approved:


*/s/ Thomas L. Henderson*
Thomas L. Henderson (# 0039789)
LERNER, SAMPSON & ROTHFUSS
Attorneys for Plaintiff
120 E. Fourth Street, Suite 800
Cincinnati, OH 45202




*Submitted April 10, 2014*
Leonard Nyamusevya
P.O. Box 243
Reynoldsburg, OH 43068
*Pro Se*




*Submitted April 10, 2014*
Consolata Nkurunziza
376 Hemston Drive
Gahanna OH 43230




   *Approval Received via Email from Jason S. Wagner 4/16/14*
Jason S. Wagner (#0090622)
373 South High Street, 17th Floor
Columbus, OH 43215
*Attorney for Defendant,*
*Franklin County Treasurer*



4

Exhibit "A"

## Legal Description

Situated in the State of Ohio, in the County of
Franklin and in the City of Columbus:

Being Lot Number Two Hundred Seventy-Five (275), of
amended plat of WALNUT HILL PARK, SECTION 2, as the
same is numbered and delineated upon the recorded plat
thereof, of record in Plat Book  38, page 77,
Recorder's Office, Franklin County, Ohio.

N-258-K
ALL OF
(010)
144771

Property Address: 2064 Worcester Court, Columbus, OH 43232
Parcel No: 010-144771
Prior Deed Reference: 200011300241894

DESCRIPTION VERIFIED
DEAN C. RINGLE, P.E., P.S.
BY:
DATE: 10/21/2010

* APPROVAL NOT NEEDED
STRAIGHT LOT TRANSFER

Franklin County Court of Common Pleas

**Date:**            05-20-2014

**Case Title:**      CITIMORTGAGE INC -VS- LEONARD NYAMUSEVYA

**Case Number:**     10CV013480

**Type:**            JUDGMENT ORDER FOR FORECLOSURE

It Is So Ordered.

/s/ Judge Charles A. Schneider

Electronically signed on 2014-May-20    page 6 of 6

THE STATE OF OHIO } I, MARYELLEN O'SHAUGHNESSY, Clerk
Franklin County, ss } OF THE COURT OF COMMON PLEAS
WITHIN AND FOR SAID COUNTY,
HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY
TAKEN AND COPIED FROM THE ORIGINAL
_Judgement & Decree_
..NW ON FILE IN MY OFFICE
'TNESS MY HAND AND SEAL OF SAID COUNTY
..IS_____ DAY OF _July_____ A.D. 20_19_
MARYELLEN O'SHAUGHNESSY, Clerk

_____ Deputy

Court Disposition

Case Number: 10CV013480

Case Style: CITIMORTGAGE INC -VS- LEONARD NYAMUSEVYA

Case Terminated: 12 - Default

Final Appealable Order: Yes

# EXHIBIT C

IN THE FRANKLIN COUNTY COURT OF COMMON PLEAS
CIVIL DIVISION

| | | |
|---|---|---|
| CITIMORTGAGE, INC., | : | |
| Plaintiff | : | Case No. 10CVE-13480 |
| vs. | : | |
| LEONARD NYAMUSEVYA, et al., | : | JUDGE SCHNEIDER |
| Defendants | : | |

**DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, FILED JUNE 6, 2011; and**

**DENYING DEFENDANT'S MOTION TO JOIN A PLAINTIFF PARTY: ABN AMRO MORTGAGE GROUP, INC., FILED JULY 27, 2011; and**

**DENYING DEFENDANT, LEONARD NYAMUSEVYA'S SECOND MOTION TO DISMISS PLAINTIFF, CITIMORTGAGE, INC.'S COMPLAINT, FILED AUGUST 1, 2011; and**

**DENYING DEFENDANT, LEONARD NYAMUSEVYA'S MOTION TO DISMISS PLAINTIFF, CITIMORTGAGE, INC.'S COMPLAINT "WITH PREJUDICE."; FILED AUGUST 9, 2011; and**

**DENYING DEFENDANT, LEONARD NYAMUSEVYA'S MOTION TO RECUSE OR OF RIGHT OF SUBSTITUTION WITH CAUSE, FILED AUGUST 9, 2011; and**

**DENYING AMENDED DEFENDANT, LEONARD NYAMUSEVYA'S MOTION TO DISMISS PLAINTIFF, CITIMORTGAGE, INC.'S COMPLAINT "WITH PREJUDICE," FILED AUGUST 15, 2011; and**

**DENYING DEFENDANT, LEONARD NYAMUSEVYA'S MOTION TO REMOVE UNNECESSARY PARTY DEFENDANTS, FILED SEPTEMBER 7, 2011; and**

**DENYING DEFENDANT'S MOTION FOR AN ORDER COMPELLING ANSWERS TO DISCOVERY INCLUDING INTERROGATORIES, DOCUMENT REQUESTS AND REQUEST FOR ADMISSIONS PROPOUNDED ON PLAINTIFF, CITIMORTGAGE, INC., FILED SEPTEMBER 9, 2011; and**

**DENYING DEFENDANT'S MOTION FOR OBJECTION TO PLAINTIFF'S AUGUST 26, 2011 COMBINED RESPONSE PLEADING, FILED SEPTEMBER 12, 2011; and**

**DENYING DEFENDANT'S MOTION FOR AN ORDER COMPELLING PLAINTIFF TO**

1

Case 2:19-bk-52868    Doc 109-1    Filed 10/15/19    Entered 10/15/19 17:10:48    Desc
Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jul 10 10:07 AM-10CV013480
Exhibit of Page 31 of 72s
0B249 - F92

### SUPPLEMENT THE RECORD WITHIN 20 DAYS AFTER SERVICE, FILED SEPTEMBER 12, 2011; and

### FINDING TO BE MOOT DEFENDANT'S MOTION FOR GRANT OF COMMISSION FOR SERVICE OF OUT-OF-STATE SUBPOENA DUCES TECUM TO CINDY SCHNEIDER AT 1000 TECHNOLOGY DRIVE, MS 314 O FALLON, MO 63368-2240, FILED ON SEPTEMBER 15, 2011; and

### FINDING TO BE MOOT PLAINTIFF'S MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER AND MEMORANDUM CONTRA DEFENDANT'S MOTION TO REMOVE PARTIES, FILED OCTOBER 14, 2011; and

### DENYING DEFENDANT'S SECOND MOTION FOR AN ORDER COMPELLING ANSWERS TO DEFENDANT'S DISCOVERY REQUEST INCLUDIGN INTERROGATORIES, DOCUMENT PRODUCTION REQUESTS; REQUEST FOR ADMISSIONS PROPOUNDED ON PLAINTIFF, CITIMORTGAGE, INC., FILED ON OCTOBER 28, 2011; and

### DENYING DEFENDANT'S EMERGENCY MOTION TO STRIKE AND CONTRA PLAINTIFF'S FRIVOLOUS OCTOBER 14, 2011 MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER, FILED OCTOBER 28, 2011; and

### DENYING DEFENDANT LEONARD NYAMUSEVYA'S EMERGENCY MOTION FOR RECONSIDERATION VACATING THE NOVEMBER 21, 2011 DECISION AND ENTRY, FILED ON DECEMBER 1, 2011; and

### FINDING TO BE MOOT DEFENDANT, LEONARD NYAMUSEVYA'S EMERGENCY MOTION FOR PRESERVING ISSUES AND QUESTIONS AS ERROR UPON DIRECT APPEAL, FILED DECEMBER 2, 2011; and

### DENYING DEFENDANT, LEONARD NYAMUSEVYA'S COMBINED EMERGENCY MOTIONS IN LIMINE SUPPORTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE THE ENTIRE PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE ENTIRE PLAINTIFF'S JUNE 06, 2011 MOTION FOR SUMMARY JUDGMENT, FILED DECEMBER 7, 2011; and

### DENYING DEFENDANT, LEONARD NYAMUSEVYA'S EMERGENCY MOTION TO REQUEST FBI'S (FEDERAL BUREAU OF INVESTIGATION) INVESTIGATION AND OHIO STATE ATTORNEY GENERAL'S INTERVENTION FOR MORTGAGE FRAUD, FILED DECEMBER 13, 2011; and

### DENYING DEFENDANT, LEONARD NYAMUSEVYA'S 1) EMERGENCY MOTIONS TO INSPECT THE ENDORSED IN BLANK PROMISSORY NOTE AND 2) TO STRIKE THE NOTE AND CINDY SCHNEIDER'S AFFIDAVIT IN SUPPORT OF SUMMARY JUDGMENT, FILED DECEMBER 21, 2011; and

**DENYING DEFENDANT, LEONARD NYAMUSEVYA'S MOTION FOR LEAVE TO FILE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, FILED DECEMBER 29, 2011; and**

**FINDING TO BE MOOT DEFENDANT, LEONARD NYAMUSEVYA'S MOTION TO PRESERVE EVIDENCE IN COURT FILE'S RECORDS, FILED DECEMBER 29, 2011; and**

**DENYING DEFENDANT, LEONARD NYAMUSEVYA'S FINAL AMENDED MOTION TO DISMISS PLAINTIFF, CITIMORTGAGE, INC.'S COMPLAINT, FILED APRIL 18, 2013; and**

**DENYING DEFENDANT, LEONARD NYAMUSEVYA'S MOTION FOR SANCTIONS AGAINST PLAINTIFF, CITIMORTGAGE, INC., AND COUNSEL AND REQUEST FOR ORAL HEARING AND TRIAL, FILED APRIL 29, 2013; and**

**DENYING DEFENDANT LEONARD NYAMUSEVYA'S MOTION FOR RECONSIDERATION VACATING THE APRIL 22, 2013 JUDGMENT ENTRY AND REQUEST FOR ORAL HEARING, FILED APRIL 29, 2013; and**

**DENYING DEFENDANT LEONARD NYAMUSEVYA'S MOTION FOR EXTENSION OF TIME PRIOR TO MAY 24, 2013 COURT'S RULING ON PENDING MOTIONS, FILED MAY 22, 2013; and**

**DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND CONTRA PLAINTIFF'S MAY 21, 2013 COMBINED PLEADING, FILED MAY 23, 2013; and**

**FINDING TO BE MOOT DEFENDANT'S MOTION FOR JURY TRIAL, FILED MAY 28, 2013; and**

**DENYING MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, FILED MAY 29, 2013; and**

**FINDING TO BE MOOT DEFENDANT, LEONARD NYAMUSEVYA'S ADDENDUM TO MOTION FOR PRESERVING ISSUES AND QUESTIONS FOR APPEAL, AND ADDENDUM TO FINAL AMENDED MOTION TO DISMISS COMPLAINT, FILED JUNE 10, 2013**

Schneider, J.

This matter is before the Court on the motion of plaintiff Citimortgage, Inc. for summary judgment and the myriad subsequent motions filed by defendant Leonard Nyamusevya. The motion for summary judgment also applies to Consolata Nkurunziza;

3

Case 2:19-bk-52868   Doc 109-1   Filed 10/15/19   Entered 10/15/19 17:10:48   Desc
Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jul 10 10:07 AM-10CV013480
Exhibit the page 33 of 72
0B249 - F94

however, she has not opposed it. Because Citi has demonstrated that it had standing in this action at the time it filed the complaint, and because it demonstrated that it is entitled to summary judgment on its claims related to Mr. Nyamusevya and Ms. Nkurunziza's note and mortgage, its motion for summary judgment is granted. Mr. Nyamusevya's motions are mostly overruled – a few are now moot. Because they are typically redundant and based on recurring issues, many of his motions are addressed together.

I. Procedural Background

This case has a somewhat circuitous procedural background due in part to a related action that Mr. Nyamusevya filed against this Court in the Tenth District Court of Appeals. In September 2010, Citi filed its complaint in foreclosure seeking a money judgment on its note and foreclosure on the mortgage. After receiving some adverse rulings, on December 28, 2010, Mr. Nyamusevya filed an affidavit of disqualification in the Ohio Supreme Court in an attempt to remove this Court from hearing the case. On February 8, 2011, Chief Justice O'Connor filed a Judgment Entry denying the affidavit of disqualification and requiring that this case proceed before this Court. For this reason, any motions to recuse are denied.

In June 2011, Citi filed its motion for summary judgment, setting off a firestorm of motion practice on Mr. Nyamusevya's part that, aside from a stay while he litigated his case at the court of appeals, continues unabated. He filed several variations of motions to dismiss, a few untimely motions to compel discovery, a few motions to reconsider, a few motions to preserve evidence for a future appeal, a motion seeking for the FBI and Attorney General DeWine to intervene, and attempted to file an untimely motion for

4

Case 2:19-bk-52868   Doc 109-1   Filed 10/15/19   Entered 10/15/19 17:10:48   Desc
Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jul 10 10:07 AM-10CV013480
0B249 - F95
Exhibit the Page 34 of 72

summary judgment.

In reviewing his filings, the Court realized that a motion for mediation should have been granted. So the Court scheduled this matter for mediation in front of its magistrate on December 21, 2011. That mediation was unsuccessful.

As for the stay of this case that lasted from January 5, 2012, through April 22, 2013, it stemmed from the action Mr. Nyamusevya initiated in the Tenth District. In *State ex rel. Nyamusevya v. Schneider*, 10th Dist. No. 11AP-1093, Mr. Nyamusevya sought a writ of mandamus and a writ of prohibition against this Court. The county prosecutor filed a motion to dismiss Mr. Nyamusevya's complaint on this Court's behalf and the Tenth District granted the motion. On March 22, 2013, Citi notified this Court of the Tenth District's decision and asked that this matter be reinstated to the active docket. Citi also asked that its motion for summary judgment be set for a non-oral hearing. The Court set the non-oral hearing for May 24, 2013.

Although Mr. Nyamusevya contends that Ms. Nkurunziza is not a necessary party and should be removed based on a domestic-relations court order, no document supports this. His motions related to Ms. Nkurunziza are denied.

The Court is now prepared to rule on the remaining motions. But it offers one admonition: "pro se litigants are presumed to have knowledge of the law and legal procedures and are held to the same standard as litigants who are represented by counsel." *Huffer v. Huffer*, 10th Dist. No. 12AP-883, 2013-Ohio 1575, ¶ 10.

II. Standing

Much of Mr. Nyamusevya's opposition to Citi's action in general is his contention that it lacks standing. Related to the standing issue is an additional contention that Citi

5

Case 2:19-bk-52868   Doc 109-1   Filed 10/15/19   Entered 10/15/19 17:10:48   Desc
Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jul 10 10:07 AM-10CV013480
0B249 - F96
Exhibit the Damages Page 35 of 72

engaged in fraud via its August 26, 2011 combined response to Mr. Nyamusevya's second supplemental memo to defendant's reply memorandum and amended motion to dismiss, in which it said that the "Note was specially endorsed and transferred from the original lender Capital Mortgage Services, Inc. to ABM AMRO Mortgage Group, Inc. Thereafter, ABM AMRO Mortgage Group, Inc. endorsed the Note in blank converting the Note to bearer paper." Mr. Nyamusevya was likely confused by the fact that the copy of the note attached to the complaint does not bear these endorsements. This raises the issue of standing under *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 3, which determined that standing is jurisdictional and must exist at the time of the filing of the complaint. While standing is jurisdictional and determined at the time of filing, nothing in *Schwartzwald* stands for the proposition that standing cannot be proven subsequent to the complaint as long as it existed prior. *See also Bank of N.Y. Mellon v. Watkins*, 10th Dist. No. 11AP-539, 2012-Ohio-4410, ¶ 18 (holding that a foreclosure plaintiff can offer proof that standing existed on the date the complaint was filed via evidence in support of summary judgment). In support of its motion for summary judgment, Citi attached the affidavit of Cindy Schneider, its Business Operations Analyst. She incorporated into that affidavit a copy of the note that bears the special endorsements from Capital Mortgage Services, Inc. to ABN AMRO, and by ABN AMRO in blank. She also incorporated a copy of the assignment of mortgage from Capitol Mortgage to ABN AMRO. This would still leave a question of standing because Citi is the named plaintiff, but she also incorporated copies of the certificate of merger verifying that ABN AMRO merged into Citi effective September 1, 2007. Ohio corporate law provides that in instances of merger "The

6

surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located * * * without further act or deed." R.C. 1701.82(A)(3). Accordingly, Citi effectively possessed the note and mortgage effective September 1, 2007, which was well before it filed its complaint in 2010. Citi has standing to bring this action and, although the procedure may have been confusing, it does not support Mr. Nyamusevya's allegations of fraud. The motions he based on this issue are denied.

### III. Motions re Discovery

Mr. Nyamusevya also filed several fairly identical motions to compel discovery. These motions were also all unsupported by any statement of the efforts he made to resolve any discovery issues with opposing counsel, as required by Civ.R. 37(E). Additionally, they were all filed after the discovery-cutoff date and, under Loc.R. 47.02, that date "shall be the last date for any part to seek the involvement of the Trial Judge in the discovery process by way of motion * * *." And to a response Citi filed, it attached a copy of the requests he sent. Many of those requests sought testimony or discovery specifically from Citi's counsel regarding his personal actions taken in prosecuting the case on his client's behalf. Even had Mr. Nyamusevya complied with the rules, the Court would not have compelled those responses. Accordingly, his motions to compel are denied.

On a related note, Mr. Nyamusevya attempted to subpoena Citi's affiant. In light of the ruling on the other motions, his motions related to a commission for service for an out-of-state subpoena are moot. This result also renders moot Citi's motion to quash the subpoena(s). Mr. Nyamusevya's motions for leave to file various memoranda are

7

Case 2:19-bk-52868   Doc 109-1   Filed 10/15/19   Entered 10/15/19 17:10:48   Desc
Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jul 10 10:07 AM-10CV013480
Exhibit the Page 37 of 72

0B249 - F98

denied; he has filed quite enough memoranda in this matter.

## IV. Summary Judgment Standard

Under Civ.R. 56(C), summary judgment is appropriate only when "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). The party moving for summary judgment must inform the trial court of the basis for the motion and point to parts of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). This evidence must be of the type described by Civ.R. 56(C); that is, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any[.]" The moving party cannot carry this burden with conclusory assertions that the non-moving party has no evidence to support its case. *Castrataro v. Urban*, 10th Dist. No. 03AP-128, 2003-Ohio-4705, ¶ 14. Once the moving party has met this burden, the non-moving party's reciprocal burden is triggered. *Dresher* at 293. The non-moving party "may not rest upon the mere allegations or denials of his pleadings but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Civ.R. 56(E).

8

V. Discussion

In support of its motion for summary judgment, Citi attached Ms. Schneider's affidavit.[1] She testified that she reviewed the business records related to Mr. Nyamusevya's account, that Citi kept these records in the regular course of business, that she is familiar with the record-keeping process, and that Citi's regular practice is to have a person with knowledge update the records regularly and contemporaneously with relevant account activities – like applying mortgage payments. She also testified that the copies attached to her affidavit were authentic – copies of Mr. Nyamusevya's payment history, promissory note, mortgage, mortgage assignment, the demand letter that advised Mr. Nyamuseya of his default, and a copy of the corporate merger documents, which verify that ABN AMRO merged into Citi. Based on her review of those records, she also testified that Mr. Nyamusevya owes a principal balance on the note of $98,452.56 with interest at the rate of 6.25% per year from May 1, 2010. As discussed above, the endorsements on the note, the assignment of mortgage, and the corporate merger documents establish that Citi is entitled to enforce the note and mortgage. The evidence establishes that he is in default and the amount he owes. This evidence is sufficient to carry Citi's *Dresher* burden against Mr. Nyamusevya and Ms. Nkurunziza. *Dresher*, 75 Ohio St.3d at 292-293, 662 N.E.2d 264.

In opposition to Citi's motion, Mr. Nyamusevya filed his own affidavit. He testified that Citi's motion for summary judgment left genuine issues of material fact, that Citi was not entitled to summary judgment, that Citi will be liable to him, that he does not owe the $98,452.56 claimed by Citi, that Cindy Schneider's affidavit is false, and stated that his "due process right and equal protection of the law is at risk * * *." These naked

---

[1] It should go without saying, but Ms. Schneider is of no relation to the Court.

9

allegations are insufficient to defeat Citi's properly supported motion for summary judgment. *See Gen. Motors Acceptance Corp. v. Ferguson*, 10th Dist. No. 04AP-795, 2005 Ohio 899, ¶ 7 (where the defendant questioned the balance due but presented no *evidence* to demonstrate that her payments were not properly applied to the balance due or that the balance due was not correct, summary judgment was properly granted in favor of the plaintiff; defendant raised only non-specific doubt and failed to set forth specific facts showing there was a genuine issue for trial); *see also OhioHealth Corp. v. Ryan*, 10th Dist. No. 10AP-937, 2012-Ohio-60, ¶ 37, quoting *Wells Fargo Bank, N.A. v. Sessley,* 188 Ohio App.3d 213, 2010-Ohio-2902, 935 N.E.2d 70, ¶ 30 (10th Dist.) ("a party may not simply use a self-serving affidavit to establish a genuine issue of material fact if such an affidavit contains nothing more than bare contradictions of other competent evidence and a conclusory statement of law."). There is no genuine issue of material fact for trial.

Additionally, because the Clerk of Courts maintains her own records, and because Mr. Nyamusevya has repeatedly documented his concerns related to standing, his motions to preserve issues for direct appeal are moot. His motions to involve the FBI and the Ohio Attorney General are denied. Mr. Nyamusevya's motion for sanctions against plaintiff and its counsel is similarly denied.

Accordingly, summary judgment in favor of Citi is GRANTED. Mr. Nyamusevya's additional motions are DENIED, with the exception of those identified as MOOT.

Counsel for plaintiff shall prepare an appropriate entry and submit the proposed entry to counsel for the adverse parties pursuant to Loc. R. 25.01. A copy of this

decision shall accompany the proposed entry when presented to the Court for

signature.

Copies to:

Adria Fields, Esq.
Counsel for Defendant

Elizabeth Carullo, Esq.
Counsel for Plaintiff

Thomas Henderson, Esq.
Counsel for Plaintiff

Leonard Nyamusevya
Defendant

Consolata Nkurunziza
376 Hemston Dr.
Gahanna, OH 43230
Defendant

Franklin County Court of Common Pleas

**Date:** 07-10-2013

**Case Title:** CITIMORTGAGE INC -VS- LEONARD NYAMUSEVYA

**Case Number:** 10CV013480

**Type:** DECISION

It Is So Ordered.

/s/ Judge Charles A. Schneider

Electronically signed on 2013-Jul-10    page 12 of 12

THE STATE OF OHIO     I, MARYELLEN O'SHAUGHNESSY, Clerk
Franklin County, ss    OF THE COURT OF COMMON PLEAS
                       WITHIN AND FOR SAID COUNTY,
HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY
TAKEN AND COPIED FROM THE ORIGINAL.
                    Decision
NOW ON FILE IN MY OFFICE
WITNESS MY HAND AND SEAL OF SAID COUNTY
THIS ___ DAY OF _July_ A.D. __ 19
        MARYELLEN O'SHAUGHNESSY, Clerk
By _____     Deputy

Case 2:19-bk-52868   Doc 109-1   Filed 10/15/19   Entered 10/15/19 17:10:48   Desc
Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jul 10 10:07 AM-10CV013480
0B249  -  G4
Exhibit the Page 42 of 72

Court Disposition

Case Number:  10CV013480

Case Style:  CITIMORTGAGE INC -VS- LEONARD NYAMUSEVYA

Motion Tie Off Information:

1. Motion CMS Document Id: 10CV0134802011-06-0699970000
   Document Title: 06-06-2011-MOTION FOR SUMMARY
JUDGMENT
   Disposition: MOTION GRANTED


2. Motion CMS Document Id: 10CV0134802011-07-2799970000
   Document Title: 07-27-2011-MOTION TO ADD PARTY
   Disposition: MOTION DENIED


3. Motion CMS Document Id: 10CV0134802011-08-0199980000
   Document Title: 08-01-2011-MOTION TO DISMISS
   Disposition: MOTION DENIED


4. Motion CMS Document Id: 10CV0134802011-08-0999980000
   Document Title: 08-09-2011-MOTION TO DISMISS
   Disposition: MOTION DENIED


5. Motion CMS Document Id: 10CV0134802011-08-0999970000
   Document Title: 08-09-2011-MOTION
   Disposition: MOTION DENIED

6. Motion CMS Document Id: 10CV0134802011-08-1599980000
   Document Title: 08-15-2011-MOTION TO DISMISS
   Disposition: MOTION DENIED

7. Motion CMS Document Id: 10CV0134802011-09-0799980000
   Document Title: 09-07-2011-MOTION
   Disposition: MOTION DENIED

8. Motion CMS Document Id: 10CV0134802011-09-0799920000
   Document Title: 09-07-2011-MOTION
   Disposition: MOTION DENIED

9. Motion CMS Document Id: 10CV0134802011-09-0999980000
   Document Title: 09-09-2011-MOTION
   Disposition: MOTION DENIED

10. Motion CMS Document Id: 10CV0134802011-09-0999940000
    Document Title: 09-09-2011-MOTION
    Disposition: MOTION DENIED

Case 2:19-bk-52868   Doc 109-1   Filed 10/15/19   Entered 10/15/19 17:10:48   Desc
Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jul 10 10:07 AM-10CV013480
Exhibit the Page 44 of 72
0B249 - G6

11. Motion CMS Document Id: 10CV0134802011-09-1299970000
Document Title: 09-12-2011-MOTION
Disposition: MOTION DENIED

12. Motion CMS Document Id: 10CV0134802011-09-1299960000
Document Title: 09-12-2011-MOTION
Disposition: MOTION DENIED

13. Motion CMS Document Id: 10CV0134802011-09-1599980000
Document Title: 09-15-2011-MOTION
Disposition: MOTION IS MOOT

14. Motion CMS Document Id: 10CV0134802011-10-1499970000
Document Title: 10-14-2011-MOTION TO QUASH
Disposition: MOTION IS MOOT

15. Motion CMS Document Id: 10CV0134802011-10-2899980000
Document Title: 10-28-2011-MOTION
Disposition: MOTION DENIED

Case 2:19-bk-52868   Doc 109-1   Filed 10/15/19   Entered 10/15/19 17:10:48   Desc
Franklin County Ohio Clerk of Courts of the Common Pleas- 2013 Jul 10 10:07 AM-10CV013480
Exhibit the Page 45 of 72
0B249 - G7

16. Motion CMS Document Id: 10CV0134802011-10-2899970000

   Document Title: 10-28-2011-MOTION

   Disposition: MOTION DENIED


17. Motion CMS Document Id: 10CV0134802011-10-2899920000

   Document Title: 10-28-2011-MOTION

   Disposition: MOTION DENIED


18. Motion CMS Document Id: 10CV0134802011-12-0199980000

   Document Title: 12-01-2011-MOTION TO RECONSIDER

   Disposition: MOTION DENIED


19. Motion CMS Document Id: 10CV0134802011-12-0299940000

   Document Title: 12-02-2011-MOTION

   Disposition: MOTION IS MOOT


20. Motion CMS Document Id: 10CV0134802011-12-0299930000

   Document Title: 12-02-2011-MOTION

   Disposition: MOTION IS MOOT

Case 2:19-bk-52868   Doc 109-1   Filed 10/15/19   Entered 10/15/19 17:10:48   Desc
Franklin County Ohio Clerk of Courts of the Common Pleas - 2013 Jul 10 10:07 AM-10CV013480
Exhibit the Page 46 of 72

0B249 - G8

21.  Motion CMS Document Id: 10CV0134802011-12-0299920000

Document Title: 12-02-2011-MOTION

Disposition: MOTION DENIED


22.  Motion CMS Document Id: 10CV0134802011-12-0799980000

Document Title: 12-07-2011-MOTION IN LIMINE

Disposition: MOTION DENIED


23.  Motion CMS Document Id: 10CV0134802011-12-1399930000

Document Title: 12-13-2011-MOTION

Disposition: MOTION DENIED


24.  Motion CMS Document Id: 10CV0134802011-12-2199930000

Document Title: 12-21-2011-MOTION

Disposition: MOTION DENIED


25.  Motion CMS Document Id: 10CV0134802011-12-2999930000

Document Title: 12-29-2011-MOTION FOR LEAVE TO FILE

Disposition: MOTION DENIED

26. Motion CMS Document Id: 10CV0134802011-12-2999870000
    Document Title: 12-29-2011-MOTION
    Disposition: MOTION IS MOOT

27. Motion CMS Document Id: 10CV0134802013-04-1899960000
    Document Title: 04-18-2013-MOTION TO DISMISS
    Disposition: MOTION DENIED

28. Motion CMS Document Id: 10CV0134802013-04-2999980000
    Document Title: 04-29-2013-MOTION FOR SANCTIONS
    Disposition: MOTION DENIED

29. Motion CMS Document Id: 10CV0134802013-04-2999970000
    Document Title: 04-29-2013-MOTION TO RECONSIDER
    Disposition: MOTION DENIED

30. Motion CMS Document Id: 10CV0134802013-05-2299980000
    Document Title: 05-22-2013-MOTION TO EXTEND TIME
    Disposition: MOTION DENIED

31. Motion CMS Document Id: 10CV0134802013-05-2399970000
    Document Title: 05-23-2013-MOTION FOR ATTORNEY
    WITHDRAWAL
    Disposition: MOTION RELEASED TO CLEAR DOCKET

32. Motion CMS Document Id: 10CV0134802013-05-2399960000
    Document Title: 05-23-2013-MOTION FOR JUDGMENT ON
    PLEADINGS
    Disposition: MOTION DENIED

33. Motion CMS Document Id: 10CV0134802013-05-2899980000
    Document Title: 05-28-2013-MOTION TO REQUEST JURY TRIAL
    Disposition: MOTION IS MOOT

34. Motion CMS Document Id: 10CV0134802013-05-2999980000
    Document Title: 05-29-2013-MOTION FOR LEAVE TO FILE
    Disposition: MOTION DENIED

35. Motion CMS Document Id: 10CV0134802013-06-1099980000
    Document Title: 06-10-2013-MOTION TO AMEND
    Disposition: MOTION IS MOOT

Franklin County Ohio Clerk of Courts of the Common Pleas - 2013 Jul 10 10:07 AM-10CV013480
0B249 - G11

0A236 - B72

# EXHIBIT D

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

| | | |
|---|---|---|
| CitiMortgage, Inc., | : | |
|     Plaintiff-Appellee, | : | |
| v. | : | No. 14AP-464 |
| Leonard Nyamusevya, | : | (C.P.C. No. 10CVE-09-13480) |
|     Defendant-Appellant, | : | (REGULAR CALENDAR) |
| (Consolata Nkurunziza et al., | : | |
|     Defendants-Appellees). | : | |

---

## D E C I S I O N

Rendered on August 30, 2016

---

**On brief:** *Lerner, Sampson & Rothfuss,* and *Rick D. DeBlasis,* for appellee CitiMortgage, Inc. **Argued:** *Rick D. DeBlasis.*

**On brief:** *Doucet & Associates Co., L.P.A., Troy J. Doucet,* and *Daniel A. Yarmesch,* for appellant. **Argued:** *Brian A. Flick.*

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

    {¶ 1} Defendant-appellant, Leonard Nyamusevya, appeals from a judgment of the Franklin County Court of Common Pleas in favor of plaintiff-appellee, CitiMortgage, Inc. ("Citi"). For the reasons that follow, we affirm the judgment of the trial court in part and reverse in part.

0A236 - B73

No. 14AP-464                                                                      2

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}  On June 26, 2002, appellant executed a first mortgage on certain real property located 2064 Worcester Court, Columbus, Ohio ("mortgage"), as security for a promissory note ("note") to Capitol Mortgage Services, Inc. ("Capitol") in the amount of $136,700.  Capitol subsequently assigned the mortgage and endorsed the note to ABN AMRO Mortgage Group, Inc. ("ABN").  The Franklin County Recorder duly recorded the mortgage on July 5, 2002.  Citi subsequently acquired ABN by way of merger.

{¶ 3}  When appellant defaulted on payment, Citi commenced a foreclosure action against appellant on September 14, 2010 in the Franklin County Court of Common Pleas. The caption of the complaint identifies plaintiff as "CitiMortgage, Inc. successor by merger to ABN AMRO Mortgage Group, Inc." (Compl. at 1.)  The complaint seeks a judgment on the note in the amount of $98,452.56, plus interest at 6.25 percent per annum from May 1, 2010, plus court costs, advances, and other allowable charges.  Citi also named the Franklin County Treasurer as a defendant.

{¶ 4}  Citi attached a copy of the mortgage as an exhibit to the complaint along with a "Corporation Assignment of Mortgage," dated June 26, 2002, purporting to assign the mortgage from Capitol to ABN. (Compl. at Ex. B.)  The complaint alleges that a copy of the note "is not available at this time." (Compl. at 2.)  On September 28, 2010, Citi submitted a notice of filing containing a copy of the note bearing a special indorsement from Capitol to ABN.

{¶ 5}  On October 8, 2010, defendant-appellee Consolata Nkurunziza filed an answer to the complaint.  On October 14, 2010, appellant, pro se, filed an answer and a counterclaim alleging violations of the Consumer Sales Practices Act and conversion.  On June 6, 2011, Citi filed a motion for summary judgment both as to its claims for relief and the counterclaim.  In the ensuing two-year period, appellant filed numerous motions seeking a dismissal of the complaint and for reconsideration of the trial court's rulings thereon. An unsuccessful mediation also took place.

{¶ 6}  On July 10, 2013, the trial court issued a decision granting Citi's motion for summary judgment.  Following the trial court's decision on summary judgment, appellant removed the action to the United State District Court.  On March 24, 2014, the United

0A236 - B74

Sates District Court, Southern District of Ohio, Eastern Division, issued an order remanding the case to the trial court.

{¶ 7} On May 20, 2014, the trial court issued a judgment and decree in foreclosure in favor of Citi in the amount sought in the complaint. Appellant filed a timely notice of appeal to this court on June 11, 2014.

## II. ASSIGNMENTS OF ERROR

{¶ 8} Appellant assigns the following as error:

1. The Trial Court erred when it granted CitiMortgage summary judgment on its foreclosure claims.

2. The Trial Court erred when it denied Mr. Nyamusevya's Motions to Dismiss filed on October 14, 2010, August 1, 2011, August 9, 2011, August 15, 2011, and April 18, 2013.

3. The Trial Court erred when it denied Mr. Nyamusevya's Motion to Strike Cindy Schneider's Affidavit filed December 21, 2011.

## III. STANDARD OF REVIEW

{¶ 9} Appellate review of summary judgment is de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 8. To obtain summary judgment, the movant must show that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, ¶ 24.

## IV. LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 10} In appellant's first assignment of error, appellant contends that the trial court erred by granting Citi's motion for summary judgment because Citi did not submit sufficient proof of its standing to enforce the note and foreclose on the mortgage and because Citi failed to establish the amount owed on the note. We disagree.

{¶ 11} Summary judgment in a foreclosure action is not appropriate unless the party seeking foreclosure presents evidentiary-quality materials showing (1) the movant is

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

0A236 - B75

No. 14AP-464                                                                                                    4

the holder of the note and mortgage or is a party entitled to enforce the instrument, (2) if the movant is not the original mortgagee, the chain of assignments and transfers, (3) the mortgagor is in default, (4) all conditions precedent have been met, and (5) the amount of principal and interest due. *Deutsche Bank Natl. Trust Co. v. Thomas*, 10th Dist. No. 14AP-809, 2015-Ohio-4037, ¶ 9, 19; *Regions Bank v. Seimer*, 10th Dist. No. 13AP-542, 2014-Ohio-95, ¶ 19; *Bank of New York Mellon v. Rankin*, 10th Dist. No. 12AP-808, 2013-Ohio-2774, ¶ 23.

### 1. Standing

{¶ 12} Appellant first contends that Citi is not entitled to judgment in its favor, as a matter of law, because it failed to establish that it had standing to enforce the note and to foreclose on the mortgage at the time it filed the complaint. In making this claim, appellant contends that under the Supreme Court of Ohio decision in *Fed. Home Loan Mtge. Corp v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, a mortgagee must attach to the complaint all documents necessary to establish that it has standing to enforce the note and foreclose on the mortgage. We disagree with appellant's interpretation of *Schwartzwald*.

{¶ 13} In *Schwartzwald*, the plaintiff (Federal Home Loan) commenced a foreclosure action before it obtained an interest in the promissory note or an assignment of mortgage securing the loan. *Id.* at ¶ 2. The Schwartzwalds maintained that Federal Home Loan lacked standing to sue. The trial court granted Federal Home Loan's motion for summary judgment and issued a decree of foreclosure. The appellate court held that Federal Home Loan remedied its lack of standing when it obtained an assignment from the real party in interest subsequent to the commencement of the foreclosure action.

{¶ 14} The Supreme Court of Ohio concluded that the plaintiff did not have standing because "it failed to establish an interest in the note or mortgage at the time it filed suit." *Id.* at ¶ 28. The decision in *Schwartzwald* is grounded on the proposition that " '[i]t is an elementary concept of law that a party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action.' " (Emphasis deleted.) *Id.* at ¶ 22, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 179 (1973). Under

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

0A236 - B76

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

*Schwartzwald*, a "lack of standing at the commencement of a foreclosure action requires dismissal of the complaint * * * without prejudice." *Id.* at ¶ 40.

{¶ 15} Appellant argues that summary judgment in favor of Citi is inappropriate under *Schwartzwald* because Citi failed to attach to its complaint either a copy of the note or documents evidencing its merger with ABN. This court, however, has taken the position that under *Schwartzwald*, a mortgagee can offer proof after the filing of the foreclosure action to establish that it was a holder of the note at the time the mortgagee filed the complaint. *Wells Fargo Bank, N.A. v. Odita*, 10th Dist. No. 13AP-663, 2014-Ohio-2540, ¶ 9. This court has also held that "a mortgagee can offer proof after the filing of the foreclosure action to establish that the mortgage was assigned to the mortgagee prior to or at the time of the filing of the foreclosure action." *Bank of New York Mellon v. Watkins*, 10th Dist. No. 11AP-539, 2012-Ohio-4410, ¶ 18.

{¶ 16} Appellant relies on the decision of the Ninth District Court of Appeals in *Wells Fargo Bank N.A. v. Horn*, 9th Dist. No. 12CA010230, 2013-Ohio-2374, as support for their interpretation of the *Schwartzwald* case. In *Horn*, the original lender was Norwest Mortgage, Inc. *Id.* at ¶ 2. In Wells Fargo's complaint for foreclosure, Wells Fargo identified itself as the "successor by merger to Wells Fargo Home Mortgage, Inc. fka Norwest Mortgage, Inc." *Id.* at ¶ 12. Wells Fargo did not, however, attach documents to the complaint evidencing the merger. *Id.* Wells Fargo subsequently submitted the merger documents in connection with its motion for summary judgment. *Id.* at ¶ 13. Relying on the decision of the Supreme Court in *Schwartzwald*, the Ninth District concluded that Wells Fargo "was required to demonstrate that it had standing to invoke the jurisdiction at the time the complaint was filed, and it failed to do so in the complaint and the documents attached thereto." *Horn* at ¶ 13. Because Wells Fargo had not attached documentation to its complaint showing that Wells Fargo was the successor to the previous mortgagee, the Ninth District concluded that Wells Fargo lacked standing to bring the foreclosure action against Horn. The Ninth District remanded the case to the trial court to dismiss the complaint without prejudice. *Id.* at ¶ 14.

{¶ 17} Subsequent to the briefing in this case, the Supreme Court in *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, reversed the Ninth District decision. In so doing, the Supreme Court clarified its prior decision in *Schwartzwald* by

0A236 - B77

explaining that a mortgagee need not prove standing at the time the foreclosure action is filed. *Horn*, 2015-Ohio-1484, at ¶ 1. "Rather, although the plaintiff in a foreclosure action must have standing at the time suit is commenced, proof of standing may be submitted subsequent to the filing of the complaint." *Id.* Accordingly, the Supreme Court concluded that Wells Fargo had standing to commence an action on the note and to foreclose on the mortgage as a successor in interest to Wells Fargo Home Mortgage, Inc. f.k.a. Norwest Mortgage, Inc., even though Wells Fargo did not attach copies of the merger documents to the complaint in foreclosure.

{¶ 18} Here, Citi alleged in the complaint that it is the "successor by merger to ABN AMRO Mortgage Group, Inc." (Compl. at 1.) Based on the holding of the Supreme Court in *Horn*, Citi was not required to attach the merger documents to the complaint in order to show that it had an interest in the note and the mortgage at the time it filed the complaint. Rather, Citi could submit proof that it was the successor in interest to ABN with its motion for summary judgment.

{¶ 19} Appellant argues, in the alternative, that subsequent to the filing of the complaint, Citi failed to produce evidence establishing that it had an interest in both the note and mortgage at the time it filed the complaint. We disagree.

{¶ 20} In support of the motion for summary judgment, Citi submitted the March 13, 2011 affidavit of Cindy Schneider, a Citi Business Operations Analyst. Schneider's affidavit provides, in relevant part, as follows:

> 1. In my job position I have access to and I am authorized to take custody of the loan origination files, collateral files, mortgage loan account records and all other documents maintained and controlled by Citi, that relate to residential mortgage loan accounts which are serviced by Citimorgage [sic], Inc.
>
> 2. Affiant states that the collateral file, maintained by Citi, includes the original promissory Note ("Note") dated June 26, 2002, executed by Defendants, originally payable to Capital Mortgage Corporation, Inc. for the original amount of $136,700.00. The collateral file also includes the original Mortgage executed by Defendants in favor of Capital Mortgage Corporation, Inc. The Mortgage identifies and encumbers the real property commonly known as 2064 Worcester Court, Columbus, OH 43232 ("Property"). The

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

0A236 - B78

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

Mortgage duly filed for record on July 5, 2002, at Instrument No. 200207050165969, in the Franklin County Recorders [sic] Office. Citi's records further include the Assignment of the subject Mortgage from Capitol Mortgage Corporation to ABN AMRO Mortgage Group, Inc. *True and accurate copies of the Note, Mortgage and Assignment as they are maintained by Citi are attached as Exhibits "B", "C" and "D" respectively.*

3. A review of Exhibit "A" establishes that the Defendants did not tender the monies necessary to cure the default, as required by the July 30, 2010 demand letter and as a result, Plaintiff elected to accelerate the entire amount due and owing.

4. Attached hereto as Exhibit "F" is a true copy of corporate merger documents, which indicate that ABN AMRO Mortgage Group, Inc. was acquired by Citimortgage, Inc. These merger documents are kept in the course of the regular business activity of Citimortgage, Inc. and are maintained in accordance with paragraph number 1 herein.

(Emphasis added.) (Schneider Aff. at 1-2.)

{¶ 21} The trial court concluded that Schneider's unrebutted affidavit and the documents attached thereto established that Citi had standing to enforce the note and mortgage when Citi filed the complaint on September 14, 2010. With regard to the mortgage, Citi attached to its complaint both a copy of the mortgage for the subject property to Capitol and an assignment of the mortgage to ABN. Schneider's affidavit and the attached "Certificate of Merger" issued by the state of New York establish that on September 1, 2007, Citi became the successor in interest to ABN by way of merger. Thus, the evidence in the record establishes that Citi had an interest in the mortgage at the time it filed the complaint in foreclosure.

{¶ 22} With regard to the note, appellant points to alleged deficiencies in the affidavit which, according to appellant, creates an issue of fact whether Citi had an interest in the note at the time it filed the complaint. Appellant points out that Schneider fails to aver that ABN was a person in possession of the note at the time of the merger or that Citi had possession of the note when it filed the complaint.

0A236 – B79

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

{¶ 23} Our review of the evidence reveals that ABN had the right to enforce the note prior to the 2007 merger either by virtue of the special indorsement from Capitol or as the possessor of the note indorsed in blank. *See* former R.C. 1301.01(T)(1)(a) and (b) (repealed), now R.C. 1301.201(B)(21)(a). It is also without question that Citi became the successor to ABN's interest in the note on September 1, 2007, by virtue of the merger. Citi alleged in the complaint that it was the holder of the note and subsequently produced a "true and accurate" copy of the note indorsed in blank by ABN. Schneider averred that a "true and accurate" copy of the note is contained in Citi's collateral file. Thus, the evidence produced by Citi established that it was entitled to enforce the note at the time it filed the complaint. The fact that Citi earlier produced an unauthenticated copy of the note bearing only the special indorsement from Capitol to ABN does not give rise to a factual issue whether Citi had an interest in the note when it filed the complaint. Appellants produced no evidence in response to Citi's motion for summary judgment to support the allegation that ABN was not a holder of the note at the time of the merger or that Citi was not a holder of the note at the time it filed the complaint. Appellant's assertions to the contrary are pure speculation. *See, e.g., U.S. Bank Natl. Assn. v. Urbanski*, 10th Dist. No. 13AP-520, 2014-Ohio-2362, ¶ 21 ("It is well understood that using mere speculation to raise questions of material fact is not enough to defeat a summary judgment motion."); *Poliseno v. Mitchell*, 10th Dist. No. 09AP-1001, 2010-Ohio-2615, ¶ 26 (finding mere speculation is not sufficient to overcome a motion for summary judgment), citing *Whiteside v. Conroy*, 10th Dist. No. 05AP-123, 2005-Ohio-5098, ¶ 66.

{¶ 24} Because there were no genuine issues of fact with regard to Citi's right to enforce the mortgage and the note at the time it filed the complaint, Citi had standing to commence the foreclosure action against appellant.

### 2. Amount Due and Owing on the Note

{¶ 25} Appellant next contends that Citi is not entitled to judgment as a matter of law because it failed to establish the absence of a factual issue regarding the amount owed on the note. Schneider's affidavit provides, in relevant part, as follows:

> 1. Attached hereto as Exhibit "A" is an authentic printout of said business activity and payment history of the mortgage

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

loan account of Leonard Nyamusevya and Consolata
Nkurunziza ("Defendants"), Defendants-Borrowers in this
foreclosure proceeding.   Said printout [is] known as the
Consolidated Note Report * * *.

* * *

5. Affiant states that a review of the payment history attached
as Exhibit "A" indicates that the account is due for the June 1,
2010 payment and all subsequent payments.   Exhibit "A"
further establishes that Defendants Leonard Nyamusevya and
Consolata Nkurunziza owe Citimortgage, Inc. a principal
balance of $98,452.56 with interest at the rate of 6.25000%
per year from May 1, 2010.

(Schneider Aff. at 1-2.)

{¶ 26} Appellant argues that the amount Schneider claims is due and owing on the

note is erroneous because the Consolidated Note Report on which Schneider relies does

not reflect account activity in the 23-month period between June 2002 and April 15,

2004. Appellant's affidavit provides, in relevant part, as follows:

The Court's Records factually prove and substantiate that
Defendant Leonard Nyamusevya paid a principal lump sum
amount of **$26,000** on August 14, 2002, to ABN AMRO
Mortgage Group, Inc. and therefore, the Court's Records and
facts prove that on **August 14, 2002,** the mortgage loan
repayment account balance was in the amount of
**$110,412.80,** which is lower than the April 15, 2004 starting
mortgage premium balance in the amount of **$130,344.04**
per Plaintiff Citimortgage's redacted, forged and manipulated
"Consolidated Note Report."[1]

(Emphasis sic.)

{¶ 27} Appellant argues that his affidavit creates an issue of fact as to the amount

owed on the loan. Citi relies on *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. No.

98502, 2013-Ohio-1657, in arguing that appellant's self-serving affidavit standing alone

and without corroborating materials under Civ.R. 56 is insufficient to demonstrate

material issues of fact. In *Najar*, the lender submitted the affidavit of a loan servicing

---

[1] Appellant submitted his affidavit in connection with his May 1, 2013 amended reply memorandum contra
Citi's June 6, 2011 motion for summary judgment.

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

agent who averred as to the amount owed on the loan based on the lender's "payoff statement." *Id.* at ¶ 40. The only evidence the borrowers offered to contradict the balance due on the note was an affidavit from the wife of one of the borrowers who averred that the payoff statement was "not a record of my payment history" and does not "accurately reflect the amount I owe on this account." *Id.* at ¶ 41, 43. Affiant also claimed she had receipts showing that she "remitted at least 4 payments * * * after October of 2009," but the receipts did not appear in the record on appeal. *Id.* at ¶ 41. The court in *Najar* found "little relevance" in affiant's claim that the lender's documentation did not "accurately reflect the amount I owe on this account," given the fact that affiant "was not one of the borrowers and, therefore, was not personally liable on the note." *Id.* at ¶ 43. With regard to the value of the remaining averments, the court of appeals concluded that the affidavit contained only conclusory, self-serving assertions without any corroborating materials and was insufficient to demonstrate issues of material fact. *Id.* at ¶ 42. In reaching this conclusion, the court noted that the affiant failed to identify what additional payments she contended were made, when they were made, the amount of the payments, or the amount she believed was due on the loan. *Id.* at ¶ 43.

{¶ 28} By contrast, in *Wells Fargo Bank, N.A. v. Fridley*, 9th Dist. No. 13CA0049, 2014-Ohio-5604, the lender made a general averment in her affidavit that payments had not been made and that a certain sum was due and owing. The borrower, Fridley, averred in her affidavit that she made payments in January or February 2013 that were not posted to her account. Viewing the evidence in a light most favorable to Fridley, the Ninth District concluded that a genuine dispute of material fact remained with respect to the amount due. *Id.* at ¶ 21. The Ninth District found *Najar* to be factually distinguishable because the borrower's affidavit in *Najar* was less specific then Fridley's affidavit regarding the date of the disputed payments and because the lender in *Najar* "submitted more evidentiary materials (such as a copy of the payoff statement for the loan) in support of its motion." *Id.* at ¶ 20.

{¶ 29} In *UAP-Columbus JV326132 v. Young*, 10th Dist. No. 14AP-422, 2014-Ohio-4590, this court found that a borrower's affidavit was insufficient to create an issue of fact as to the amount owed on the loan. *Id.* at ¶ 18. In *Young*, the borrower's affidavit contained only the conclusory statement that he made payments on the note that the

0A236 — B82

lender did not attribute to his account. The borrower failed to specify in the affidavit when those payments were made, the amount of such payments, and the amount he believed was currently due. The borrower also failed to provide any documentary evidence to support his claim. This court, citing *Najar*, agreed with the trial court that the borrower's affidavit was insufficient to prevent summary judgment. *Id.* at ¶ 18.

{¶ 30} Appellant's affidavit in this case is more specific than the affidavit considered by this court in *Young* and by the Eighth District in *Najar*. Here, appellant avers that he made a large payment to principal during the 23-month period that is not shown on the Consolidated Note Report attached to Schneider's affidavit. Appellant specifies the amount of the payment he made, the date he made the payment, and the amount he claims was due and owing as of April 15, 2004, the date of the first entry on the Consolidated Note Report. According to appellant, he owed $110,412.80 as of April 15, 2004, not $130,344.04 as shown in the Consolidated Note Report. Because Schneider's averment regarding the amount owed on the loan at the time of default is based on an assumption that the Consolidated Note Report shows the correct balance owed on April 15, 2004, appellant's affidavit casts doubt on the accuracy of Schneider's averment.

{¶ 31} Citi asks this court to reject appellant's affidavit because appellant did not provide any support for his claim that he made the lump sum payment in 2002. We agree, however, with the observation of the court in *Fridley* regarding the burden of production under Civ.R. 56:

> While affidavits are required in some instances to authenticate documents submitted in support of or in response to a motion for summary judgment, the reverse is not true. In other words, neither a moving party nor a nonmoving party is required by Rule 56 to provide documents, discovery responses, or transcripts of evidence in addition to properly framed affidavits.

*Id.* at ¶ 19, quoting *Stone v. Cazeau*, 9th Dist. No. 07CA009164, 2007-Ohio-6213, ¶ 14.

{¶ 32} In our view, appellant's affidavit in this case is specific enough to meet appellant's reciprocal burden of producing evidence in response to Schneider's averment regarding the amount due on the loan. Viewing the evidence in a light most favorable to appellant, we find that appellant's affidavit creates an issue of fact as to the amount owed

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

0A236 - B83

on the loan at the time of default. Accordingly, appellant's first assignment of error shall be sustained in part as to the amount appellant owes on the loan, and the case shall be remanded to the trial court for further proceedings to determine the amount owed.

{¶ 33} For the foregoing reasons, appellant's first assignment of error is sustained in part and overruled in part.

### B. Second Assignment of Error

{¶ 34} In appellant's second assignment of error, appellant contends that the complaint does not allege sufficient facts to support a finding that Citi has standing to enforce the note and to foreclose on the mortgage. In appellant's numerous motions to dismiss the complaint, appellant alleged that Citi's failure to attach to its complaint copies of the note and merger documents required dismissal of Citi's action for lack of standing. As noted above, the caption of the complaint identifies Citi as "successor by merger" to ABN. Under the Supreme Court's decision in *Horn*, the complaint sufficiently alleges that Citi has standing to enforce the note and to foreclose on the mortgage as a successor by merger to ABN, even though Citi did not attach the merger documents as an exhibit to the complaint. Similarly, for the reasons expressed by the Supreme Court in *Horn*, we are not persuaded by appellant's argument that the complaint is subject to dismissal for lack of standing because Citi did not prove that it was a holder of the note at the time it filed the complaint and did not attach the note as an exhibit to the complaint. The complaint alleges that Citi "is the holder of a note, a copy of which is not available at this time." (Compl. at 2.) This allegation is sufficient to withstand a motion to dismiss for lack of standing. *Schwartzwald*; *Horn*.

{¶ 35} For the foregoing reasons, appellant's second assignment of error is overruled.

### C. Third Assignment of Error

{¶ 36} In appellant's third assignment of error, appellant contends that the trial court erred by denying the motion to strike Schneider's affidavit. Appellant's argument on appeal is that Schneider's averment as to the amount owed on the loan should be stricken because Schneider failed to attach documents to her affidavit evidencing appellant's entire payment history.

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

0A236 - B84

No. 14AP-464                                                                                                13

{¶ 37} In sustaining appellant's first assignment of error in part, we determined that appellant's affidavit created an issue of fact regarding the amount appellant owed on the loan. Thus, our ruling on appellant's first assignment of error disposed of the issue raised in appellant's third assignment of error. Accordingly, appellant's third assignment of error is moot. App.R. 12(C).

## V. CONCLUSION

{¶ 38} Having sustained in part and overruled in part appellant's first assignment of error, having overruled appellant's second assignment of error, and having found appellant's third assignment of error moot, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand the matter for further proceedings to determine the amount appellant owes on the loan.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

BROWN and KLATT, JJ., concur.

---

THE STATE OF OHIO }    I, MARYELLEN O'SHAUGHNESSY, Clerk
Franklin County, ss    OF THE COURT OF APPEALS
                       WITHIN AND FOR SAID COUNTY.
HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY TAKEN
AND COPIED FROM THE ORIGINAL    Decision
NOW ON FILE IN MY OFFICE. WITNESS MY HAND AND SEAL OF SAID
COUNTY THIS......17......DAY OF...July....A.D.20..19......
    MARYELLEN O'SHAUGHNESSY, Clerk
    By....Yasmine Brown....Deputy

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Aug 30 12:49 PM-14AP000464

0A244 - N42

# EXHIBIT E

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Nov 02 11:40 AM-14AP000464

| | | |
|---|---|---|
| CitiMortgage, Inc., | : | |
| Plaintiff-Appellee, | : | |
| v. | : | |
| Leonard Nyamusevya, | : | No. 14AP-464<br>(C.P.C. No. 10CVE-09-13480) |
| Defendant-Appellant, | : | (REGULAR CALENDAR) |
| (Consolata Nkurunziza et al., | : | |
| Defendants-Appellees). | : | |

### JOURNAL ENTRY

For the reasons stated in the memorandum decision of this court rendered herein on November 1, 2016, it is the order of this court that appellant's application for reconsideration is denied.

SADLER, BROWN, and KLATT, JJ.

/S/ JUDGE _____

0A244 - N43

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Nov 02 11:40 AM-14AP000464

Tenth District Court of Appeals

**Date:**              11-02-2016

**Case Title:**        CITIMORTGAGE INC -VS- LEONARD NYAMUSEVYA

**Case Number:**       14AP000464

**Type:**              JOURNAL ENTRY

So Ordered



/s/ Judge Lisa L. Sadler

Electronically signed on 2016-Nov-02    page 2 of 2



THE STATE OF OHIO
Franklin County, ss
I, MARYELLEN O'SHAUGHNESSY, Clerk
OF THE COURT OF APPEALS
WITHIN AND FOR SAID COUNTY,
HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY TAKEN
AND COPIED FROM THE ORIGINAL Journal Entry
NOW ON FILE IN MY OFFICE. WITNESS MY HAND AND SEAL OF SAID
COUNTY THIS 17 DAY OF July A.D. 20 19
MARYELLEN O'SHAUGHNESSY, Clerk
By_____ Deputy

0A244 - N44

Court Disposition

Case Number:  14AP000464

Case Style:  CITIMORTGAGE INC -VS- LEONARD NYAMUSEVYA

Motion Tie Off Information:

1.  Motion CMS Document Id: 14AP0004642016-09-1299970000
    Document Title: 09-12-2016-MOTION TO RECONSIDER -
LEONARD NYAMUSEVYA
    Disposition: 3200

Franklin County Ohio Court of Appeals Clerk of Courts- 2016 Nov 02 11:40 AM-14AP000464

0A270 – U23

# EXHIBIT F

# The Supreme Court of Ohio

FILED

MAY 17 2017

CLERK OF COURT
SUPREME COURT OF OHIO

CitiMortgage, Inc.,

    v.

Leonard Nyamusevya

Case No. 2016-1520

ENTRY

Upon consideration of the jurisdictional memoranda filed in this case, the court declines to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).

(Franklin County Court of Appeals; No. 14AP-464)

*Maureen O'Connor*

Maureen O'Connor
Chief Justice

THE STATE OF OHIO }
Franklin County, ss

I, MARYELLEN O'SHAUGHNESSY, Clerk OF THE COURT OF APPEALS WITHIN AND FOR SAID COUNTY, HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY TAKEN AND COPIED FROM THE ORIGINAL *Supreme Court Entry* NOW ON FILE IN MY OFFICE. WITNESS MY HAND AND SEAL OF SAID COUNTY THIS 17 DAY OF July A.D.20 17.

MARYELLEN O'SHAUGHNESSY, Clerk

By *Maurine Brown* Deputy

**The Official Case Announcement can be found at http://www.supremecourt.ohio.gov/ROD/docs/**

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Jun 02 1:21 PM-14AP000464

# EXHIBIT G

## COURT OF COMMON PLEAS
## FRANKLIN COUNTY, OHIO

| | |
|---|---|
| **CitiMortgage, Inc.,** | **Case No. 10CVE 09 13480** |
| Plaintiff, | Judge Dale A. Crawford |
| vs. | |
| **Leonard Nyamusevya, et al.,** | <u>**JUDGMENT FOR PLAINTIFF AND**</u> |
| Defendants. | <u>**DECREE IN FORECLOSURE**</u> |

This matter came on for jury trial on November 5, 2018, before the Honorable Dale A. Crawford, with appearances by Plaintiff through counsel, Rick D. DeBlasis, and its representative, Kyle A. Ramey, Vice President of CitiMortgage, Inc., and by Defendant, Leonard Nyamusevya. Defendant, Leonard Nyamusevya, advised the Court that he did not believe the Court had jurisdiction to hear a jury trial, vacated the courtroom prior to *voir dire*, and did not return.

Nevertheless, the Court empaneled a jury and proceeded with *voir dire* in the absence of Defendant, Leonard Nyamusevya, finding the first eight jurors satisfactory and having no peremptory challenges by Plaintiff. Following the presentation of Plaintiff's evidence, consisting of the testimony of Mr. Ramey and Plaintiff's exhibits, which were admitted without objection, the Court entertained Plaintiff's oral motion for directed verdict, and now makes the following findings of fact and conclusions of law:

The Court finds that Plaintiff adduced sufficient evidence of the amount due on the mortgage loan of Defendant, Leonard Nyamusevya, and that Plaintiff's evidence was

Case 2:19-bk-52868  Doc 109-1  Filed 10/15/19  Entered 10/15/19 17:10:48  Desc
Exhibit  Page 68 of 72
0E405 — W95  Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Nov 15 6:49 AM-10CV013480

10CVE 09 13480

unrebutted.  Therefore, the Court finds that there is due from said Defendant, Leonard Nyamusevya, to Plaintiff, the sum of $98,452.56, plus interest thereon at the rate of 6.25% per annum from June 1, 2010, plus advances made by Plaintiff for taxes, insurance, and otherwise to protect the property, and the costs of this action, the full amount of which may be ascertained, as necessary, after judicial sale of the property. *CitiMortgage, Inc. v. Roznowski,* 139 Ohio St. 3d 299; 2014-Ohio-1984.

*Defendant's post-trial " Motion To Quash 11-02-2018 Plaintiff's Proposed Jury Verdict Form " is overruled.*

IT IS THEREFORE ORDERED THAT judgment shall be, and hereby is, rendered in favor of the Plaintiff and against Defendant, Leonard Nyamusevya, in the amount of $98,452.56, plus interest thereon at the rate of 6.25% per annum from June 1, 2010, plus advances made by Plaintiff for taxes, insurance, and otherwise to protect the property, and the costs of this action.

IT IS FURTHER ORDERED THAT unless the sums hereinabove found to be due to Plaintiff, and the costs of this action, be fully paid within three (3) days from the date of the entry of this Decree, the equity of redemption of the defendant-titleholders in said real estate shall be foreclosed and the real estate sold, free of the interests of all parties herein, and an order of sale may issue to the Sheriff of this County, directing him to appraise, advertise and sell said real estate according to law and the orders of this Court, and to report his proceedings to this Court.

IT IS FURTHER ORDERED THAT the Sheriff shall send to counsel for the party requesting the Order of Sale a copy of the publication notice promptly upon its first publication.

2

10CVE 09 13480

IT IS FURTHER ORDERED THAT the Sheriff, upon confirmation of said sale, shall pay from the proceeds of said sale, upon the claims herein found, the amounts thereof in the following order of priority:

1.  To the Clerk of this Court, the costs of this action, including the fees of appraisers.

2.  To the Treasurer of this County, the taxes and assessments, due and payable as of the date of Sheriff's Sale.

3.  To the Plaintiff, the sum of $98,452.56, with interest at the rate of 6.25 percent per annum from June 1, 2010, together with advances for taxes, insurance, costs of the judicial reports required herein and otherwise expended in the protection of Plaintiff's interest in the property.

4.  The balance of the sale proceeds, if any, shall be paid by the Sheriff to the Clerk of this Court to await further orders of this Court.

The Court further finds that there is no just reason for delay.

JUDGE DALE A. CRAWFORD

/s/ Rick D. DeBlasis
Rick D. DeBlasis   (# 0012992)
LERNER, SAMPSON & ROTHFUSS
120 E. Fourth Street, Suite 800
Cincinnati, OH 45202
PH:  513-412-6614
EM:  rdd@lsrlaw.com
Attorney for Plaintiff

Submitted via email 11/07/18; no response
Leonard Nyamusevya
P.O. Box 243
Reynoldsburg, OH 43068
EM:  nyaleo@hotmail.com
Defendant Pro Se

3

0E405 - W97

10CVE 09 13480

_Submitted via email 11/07/18; no response_
Adria L. Fields, Esq.   (#0064399)
373 South High Street, 17th Floor
Columbus, OH 43215
alfields@franklincountyohio.gov
_Attorney for Defendant,_
_Franklin County Treasurer_

0E405 - W98

10CVE 09 13480

## Exhibit "A"

### Legal Description

Situated in the State of Ohio, in the County of
Franklin and in the City of Columbus:

Being Lot Number Two Hundred Seventy-Five (275), of
amended plat of WALNUT HILL PARK, SECTION 2, as the
same is numbered and delineated upon the recorded plat
thereof, of record in Plat Book  38, page 77,
Recorder's Office, Franklin County, Ohio.

N-258-K
ALL OF
(010)
144771

Property Address: 2064 Worcester Court, Columbus, OH 43232
Parcel No: 010-144771
Prior Deed Reference: 200011300241894

DESCRIPTION VERIFIED
DEAN C. RINGLE, P.E., P.S.
BY: _____
DATE: 10/21/2010

* APPROAL NOT NEEDED
STRAIGHT LOT TRANSFER

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Nov 15 6:49 AM-10CV013480
0E405 - W99

Court Disposition

Case Number:  10CV013480

Case Style:  CITIMORTGAGE INC -VS- LEONARD NYAMUSEVYA

Case Terminated:  12 - Default

Final Appealable Order:  Yes